UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| CONFEDERATION LIFE INSURANCE ) <br> & ANNUITY COMPANY, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> V. ) <br> ) <br> HOLLY GALLION, et al., ) <br> ) <br> Defendants. ) | Civil Action No. 5: 12-177-DCR <br><br><br> **MEMORANDUM OPINION** <br> **AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiffs Confederation Life Insurance & Annuity Company and Pacific Life Insurance Company (collectively, "Pacific Life") and Defendant Holly Gallion. [Record Nos. 40, 42] Defendant Angela Ford, PSC, named in her capacity as trustee, escrow agent, and administrator of PF Judgment Funds Escrow Account ("escrow account"), has also filed a motion for summary judgment against Defendant Holly Gallion. [Record No. 52] All parties claim that there is no genuine issue of material fact regarding their claims and that they are entitled to judgment as a matter of law.[1] For the reasons set forth below, Pacific Life's motion for summary judgment will be granted. Additionally, the relief requested by

---

1 On September 5, 2013, the Court extended discovery for the sole purpose of allowing the deposition of Defendant Holly Gallion to be taken. [Record No. 55] After this deposition, the parties submitted supplemental memoranda in support of their motions for summary judgment. [Record Nos. 58, 59]

Defendant Holly Gallion will be granted, in part, and the relief requested by Defendant Angela Ford will be granted, in part.

## I.

This interpleader action involves a dispute between Defendants Holly Gallion and Angela Ford[2] regarding monthly payments from an annuity issued by Pacific Life (the "periodic payments" or "annuity"), in William Gallion's name.[3] The annuity arose from a 1989 personal injury settlement, which provided monthly payments of $2,500 to be made to then-attorney William Gallion, beginning May 1, 1994, and continuing through April 1, 2019. [Record No. 18, p. 3 ¶7] Confederation Life is the payment obligor. Its obligation was assumed by Pacific Life, the now-issuer of the annuity that funds the periodic payments. [*Id*., p. 4 ¶¶8, 9]

From 1989 to November 2007, Pacific Life issued monthly annuity payments in William Gallion's name. But in 1997, William and Holly Gallion divorced and their assets were divided. The division of William and Holly Gallion's assets was effected by a division order entered by the Fayette Circuit Court on October 31, 1997. [Record No. 40-4] Their divorce decree and separation agreement states, among other things, that all annuities

---

[2] Angela Ford is also named as a defendant in her capacity as trustee, escrow agent, and administrator of an escrow trust account. [Record No. 18, p. 2] The escrow account was established for the benefit of approximately 431 claimants who asserted civil claims against William J. Gallion, Shirley A. Cunningham, and Melbourne Mills, Jr., as a result of their representation in litigation involving the diet drug fen-phen. [*Id.*]

[3] The annuity issued originally by Confederation Life Insurance Company is Annuity No. 890102100000B. It was later assumed by Pacific Life Insurance Company as Annuity No. 2649000549AN. [Record No. 1-2]

acquired during the marriage — including the Pacific Life annuity — were to be "equally divided net of taxes."[4] [Record No. 40-2, p. 7] After the division order was entered, a copy of the Fayette Circuit Court order was sent to (the now-defunct) Confederation Life Insurance & Annuity Company, which it received on or around November 4, 1997. [Record No. 40-4]

William and Holly Gallion's divorce attorneys hired outside counsel who corresponded with Confederation Life about changing the annuity to reflect Holly Gallion's interest by January 1, 1998.[5] [Record No. 40-6] However, the plaintiffs never recorded or recognized Holly Gallion's interest in the annuity, and the checks remained payable to William Gallion. As a result, Holly Gallion contends that she and William Gallion entered into an arrangement whereby she would receive the entire annuity payment each month. [Record No. 58-1, pp. 36-37] Holly was to apply William Gallion's fifty percent portion of the annuity toward his child support obligation, which was one-half of their son Peter Gallion's expenses. [*Id.*]

In March 2006, former clients of William Gallion obtained in the Boone Circuit Court a $42,000,000.00 judgment against William Gallion and his co-defendants. *See Abbott v. Cunningham*, Civil Action No. 05-CI-00436 (Boone Circuit Court). As a result of that

---

[4] As a result of the separation agreement, Holly Gallion was entitled to a fifty percent interest in thirteen annuities that were acquired during the marriage. [Record No. 58-1, p. 18] She received payments for all of the other annuities, save the Pacific Life annuity and two other "smaller" annuities. [*Id.*]

[5] Holly Gallion testified that William Gallion hired outside counsel because it was William Gallion's duty to split the annuities. [Record No. 58-1, p. 7]

judgment, the court issued a garnishment order for the Pacific Life annuity on May 7, 2008. [Record No. 18-3] The garnishment order states that Pacific Life "shall pay all funds in [its] possession that are now due to the Judgment Debtor Gallion or that become due to the Judgment Debtor Gallion in the future" to the claimants. [Record No. 52-3, p. 1]

Upon Angela Ford's direction, Pacific Life began making the periodic payments from the annuity to the escrow account[6] managed by Angela Ford. [Record No. 40-9] Then, upon the request of Ford, it began sending the payments directly to. Ford's office. [Record No. 18, p. 5 ¶15] On February 4, 2011, the Kentucky Court of Appeals reversed the Boone Circuit Court Judgment.[7] *Cunningham v. Abbott*, 2011 Ky. App. Unpub. LEXIS 969 (Ky. Ct. App. Feb. 4, 2011) (*aff'd in part, rev'd in part, sub nom. Abbott v. Chesley,* No. 2011-SC-00291-DG, 2013 Ky. LEXIS 367 (Ky. Aug. 29, 2013). The Supreme Court of Kentucky later reversed the decision of the court of appeals and remanded the matter back to the Boone Circuit Court. *See id.*

Fearing multiple liability on the annuity payments, Pacific Life suspended the payments and filed this action on June 1, 2012, seeking interpleader relief so that it may issue the periodic payments and be discharged from liability and further participation in this action. [*See* Record Nos. 1, 18.] Holly Gallion counterclaimed against Pacific Life, claiming that

---

6 PF Judgment Funds Escrow Account was originally named as a defendant in this action; however, on November 14, 2012, then-Chief Judge Jennifer Coffman dismissed it as a defendant. [Record No. 20]

7 When this action was filed, Defendant Ford had not disbursed the periodic payments since the judgment was reversed on February 4, 2011. [Record No. 18, p. 6 ¶19] The Court has not been advised regarding whether this has changed since the supreme court's August 29, 2013, opinion.

the division order and divorce decree entitle her to fifty percent of the remaining periodic payments.[8] [Record No. 19, p. 8 ¶A] She has also filed a cross-claim against Defendant Angela Ford, arguing that she is entitled to an order directing Ford to pay her one-half of the periodic payments that Pacific Life has already issued to the escrow account and Ford. [*Id.*, ¶B] Ford counters that she is entitled to the full amount of the periodic payments to satisfy the $42,000,000.00 Boone Circuit Court judgment against William Gallion. Accordingly, the true dispute is between Defendants Holly Gallion and Angela Ford; namely, whether Holly Gallion has a valid interest in the annuity and payments that issue therefrom.[9]

**II.**

Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant summary judgment,

---

[8] Holly Gallion also apparently seeks to recover from Pacific Life any portion of the funds paid pursuant to the garnishment order that she is unable to recover from Angela Ford. [Record No. 50, p. 2]

[9] Pacific Life has taken no position regarding whether Holly Gallion owns one-half of the proceeds of the Pacific Life annuity. [Record No. 40-1, p. 7]

the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.

The Federal Rules of Civil Procedure provide that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a). "Interpleader is an equitable proceeding that 'affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding.'" *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (quoting 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1704 (3d ed. 2001)).

As an initial matter, the Court finds that this interpleader action was properly brought, because Pacific Life "legitimately fears multiple vexation" directed against the annuity. *See Mudd v. Yarbrough*, 786 F. Supp. 2d 1236, 1240 (E.D. Ky. 2011) (citing *High Tech*, 497 F.3d at 642). A simple review of the defendants' filings shows that Angela Ford and Holly Gallion are asserting competing claims to the same annuity. [*See* Record Nos. 40, 48.] Thus, the second step is to determine the respective rights of the claimants to the fund at stake, *Mudd*, 786 F. Supp. 2d at 1240, a more complicated matter. The Court, like Pacific Life, is now faced with two valid but competing orders from Kentucky state courts: one proclaiming

Holly Gallion's one-half interest in the annuity, and the other garnishing the undivided annuity to satisfy the Judgment against William Gallion.

Pacific Life contends that it is entitled to summary judgment regarding the interpleader claim, and all parties agree that summary judgment is proper. Accordingly, the Court will grant Pacific Life the relief it seeks and determine the respective rights of Angela Ford and Holly Gallion in the annuity.

### A. Past Payments

Holly Gallion claims that she is entitled to one-half of the payments already issued to Ford on behalf of the escrow account, as well as one-half of the suspended and future payments. Ford disputes that there was any arrangement between William and Holly regarding the annuity, asserts that res judicata bars Holly Gallion's claims, argues that Holly Gallion waived her interest in the annuity, and contends that Holly Gallion's claims against her are barred by the doctrines of estoppel and laches.

#### 1. Annuity Arrangement

Ford first argues that there is a genuine issue of material fact regarding the existence of the annuity arrangement between William and Holly Gallion. [Record No. 52, p. 8] As Holly Gallion points out, even if a reasonable jury could find that there was no such arrangement between William and Holly Gallion, such a finding would not bar summary judgment in her favor. The existence of the side agreement between William and Holly acts to explain Holly Gallion's actions up to and following the garnishment, but it does not legally change any material fact because Holly is not asserting that she is entitled to the entirety of

the annuity. She only asserts that she is entitled to the equal division as stated in the divorce decree. [*See* Record No. 19.]

Nonetheless, the evidence presented supports Holly Gallion's assertion that she and William Gallion agreed that she would receive the entire annuity, crediting his portion towards his child support obligation. It is undisputed that the annuity payment checks, in their entirety, were sent to Holly Gallion's address in Pittsburgh for a number of years, while William Gallion resided in Florida and elsewhere.[10] [Record No. 40-1, pp. 3-4, Record No. 40-8] This arrangement is evidenced by the letter from Pacific Life in relation to the garnishment order, which was also sent to Holly Gallion's address in Pittsburgh. [Record No. 40-8] And the annuity arrangement was consistent with the separation agreement and divorce decree, which provided that the terms of the arrangement could be modified only regarding the minor children and to effectuate an equal division of the annuities. [Record No. 40-1]

Accordingly, the evidence presented to the Court demonstrates that there was an agreement between William and Holly Gallion whereby Holly would receive the entirety of the annuity. On the other hand, there is no evidence to support Ford's assertion that Holly Gallion never actually received any of the payments aside from the arguments in her

---

10 Holly Gallion contends that she and William agreed that she would be permitted to "receive[] and deposit[] those checks into her bank account with [William's] knowledge and consent and with the understanding that his share of the Pacific Life Annuity would be applied to his child support obligation." [Record No. 40-1, p. 4]

response in opposition. [Record No. 52, p. 8] Ford's arguments on this issue are without merit.

## 2. Res Judicata

Ford next argues that Holly Gallion is barred under the doctrine of res judicata from asserting her current claims because of the action in the Boone County Circuit Court that resulted in the order of garnishment. [Record No. 52, p. 12] In Kentucky,"[t]he rule of res judicata is an affirmative defense which operates to bar repetitious suits involving the same cause of action." *Yeoman v. Commonwealth Health Policy Bd.*, 983 S.W.2d 459, 464 (Ky. 1998). Under issue preclusion, parties are barred

> from relitigating any issue actually litigated and finally decided in an earlier action. The issues in the former and latter actions must be identical. The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts. If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action.

*Id*. at 464-65. For issue preclusion to operate as a bar:

> (1) at least one party to be bound in the second case must have been a party in the first case; (2) the issue in the second case must be the same as the issue in the first case; (3) the issue must have been actually litigated; (4) the issue was actually decided in that action; and (5) the decision on the issue in the prior action must have been necessary to the court's judgment and adverse to the party to be bound.

*Miller v. Admin. Office of the Courts*, 361 S.W.3d 867, 872 (Ky. 2011).

Although Pacific Life was a party to the Boone County Circuit Court and is a party that would be bound in this action, Ford's attempt to invoke issue preclusion in this case fails

because the issues in the two cases are not the same. The Boone Circuit Court did not consider Holly Gallion's interest in the annuity. [Record No. 52, p. 4] As stated by Ford, the issue before that court was "whether and to what extent the annuity payments payable to [William] Gallion were subject to garnishment by his judgment creditors." [Record No. 52, p. 12] The Court cannot say that the issue in that case is the same as the issue in this case, because this Court is faced with the question of whether the divorce decree entitles Holly Gallion to one-half of the annuity. According to Ford's own assertions, that issue was not presented before the garnishing court. Thus, it was not actually litigated or decided by that court. *See Miller*, 361 S.W.3d at 872. Nor was the issue of Holly Gallion's alleged interest in the annuity necessary to the court's garnishment order. Accordingly, res judicata does not operate as a bar to the issues presented here.

   **3.**  **Waiver**

  Next, Ford asserts that Holly Gallion has waived her interest in the annuity by failing to object to the garnishment order. "Under Kentucky law, 'a legal waiver is . . . a voluntary and intentional surrender of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon.'" *Preece Coal Co. v. Island Creek Coal Co. v. Island Creek Coal Co.*, No. 96-5212, 1997 U.S. App. LEXIS 7306, at *12-13 (Apr. 11, 1997) (quoting *Greathouse v. Shreve*, 891 S.W. 2d 387, 390 (Ky. 1995)). Here, however, Ford has not shown that Holly Gallion ever intended to intentionally or impliedly surrender her right to the annuity. Rather, Holly Gallion repeatedly testified that she attempted to split the annuity [Record No. 58-1, pp. 8, 41] and she took a number of steps

to do so, including contacting her attorneys, contacting Pacific Life, and contacting William Gallion, over the course of more than a decade. [Record Nos. 40-4, 40-6, 40-11]

She also made several efforts to attempt to have Pacific Life recognize her interest in the annuity. Holly Gallion worked with her original divorce attorney in 1997 and 1998 in an attempt to have the annuity separated. [Record No. 58-1, p. 8] She attempted to communicate with Pacific Life to have the annuity reflect her interest, "but they wouldn't talk to [her] because the annuity was in [William's] name."[11] [Record No. 58-1, p. 8] Holly Gallion testified that she continued to request that William Gallion make changes to reflect that she should receive one-half of the annuity, but William Gallion did not comply with her requests. [*Id.*] On May 14, 2009, counsel for Holly Gallion sent a letter and the divorce decree to Pacific Life, inquiring why the divorce decree had not been recognized. [Record No. 40-11, p. 2] Then again, on March 24, 2011, counsel for Holly Gallion sent a letter to Pacific Life demanding that it amend the annuity to reflect Holly's interest. [*Id.*, p. 3] However, Pacific Life never amended the annuity to reflect Holly's interest and has not offered an explanation regarding why it did not do so.

Although Holly Gallion was not as diligent as she could have been in asserting her interest in the annuity, the Court cannot say that she waived her interest when the undisputed facts show that she made multiple attempts to have her interest recognized. *See Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 344 (Ky. Ct. App. 2001) ("A waiver may

---

11 Holly testified that, "as part of the divorce agreement [William Gallion] was supposed to get the annuities separated." [Record No. 58-1, pp. 8-9]

be either express or implied, although waiver will not be inferred lightly."). Accordingly, the Court concludes that Holly Gallion did not waive her interest in the annuity.

### 4. Estoppel and Laches

Alternatively, Ford argues that Holly Gallion is barred by the equitable doctrines of estoppel and laches from asserting an interest in the annuity funds that have already been distributed. *See Barker v. Stearns Coal & Lumber Co.*, 163 S.W.2d 466, 470 ("[A] waiver is in the nature of an estoppel and is maintained on similar principles"); *see also Crady v. Hubrich*, 299 Ky. 461, 464 (defining laches as "such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less extensive, and other circumstances causing the adverse party to be prejudiced."). The Court finds this argument to be convincing regarding funds that Pacific Life already paid to Ford and the escrow account.

Kentucky law requires the following elements for estoppel:

(1) conduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied upon this conduct to his detriment.

*Howard v. Motorists Mut. Ins. Co.*, 955 S.W.2d 525, 527 (Ky. 1997) (citation omitted).

It is undisputed that Holly Gallion received notice of the garnishment proceedings against the annuity. And Holly Gallion admits that she did not appear during the garnishment proceedings. It is also undisputed that Ford did not have notice of Holly

Gallion's interest in the annuity until the summer of 2012.[12]  [Record No. 40-7, p. 2, Record No. 52, p. 16]  Ford acted according to the then-valid garnishment order of the Boone County Circuit Court and directed Pacific Life to pay the annuity payments to the escrow account. At that point, she had no reason to question that the annuity was entirely the property of William Gallion.

Based on the garnishment order, Ford distributed the funds that were obtained from Pacific Life between January 1, 2008 and October 2010, to the fen-phen claimants.  [Record No. 52, p. 17]  Between November 2010 and June 1, 2012 (the date on which this action was filed), Ford collected an additional $47,500.00 from Pacific Life.  [*Id.*]  Thus, she has collected, in total, $135,000.00 from that company.  [Record No. 42-1, p. 8]

As Ford points out, "she was entitled, indeed obligated, to follow the Boone County Circuit's orders" to collect and distribute the funds.  [Record No. 52, p. 18]  Ford acted on Holly Gallion's silence regarding the annuity payments to her detriment.  *Preece Coal Co.*, No. 96-5212, 1997 U.S. App. LEXIS 7306, at *11 (quoting *P.V. & K. Coal,* 191 S.W.2d 231, 2234 (Ky. Ct. App. 1945) ("If a person is silent with knowledge that another is doing an act in the reasonable belief that what he is doing is entirely satisfactory, when that person could easily have registered dissent or given information otherwise, then that person ought not to be entitled to recover."))  In this case, the injury to another is clear, because if Holly Gallion's claim to the past payments were to succeed, Ford and the escrow account would

---

12  During her deposition, Holly Gallion stated that she contacted Angela Ford prior to 2012. However, she never stated that she spoke to Ford regarding the annuity.  [Record No. 58-1, p. 43]

be required to refund payments that have already been issued and relied upon by the fen-phen claimants.

In summary, Holly Gallion is estopped from asserting an interest in the funds that Pacific Life has already paid to the fen-phen claimants *via* Ford, totaling $135,000.00. [Record No. 42-2, p. 5 ¶14] Accordingly, the Court will grant summary judgment in Ford's favor regarding the payments Pacific Life has already distributed to Ford on behalf of the fen-phen claimants, in the amount of the $135,000.00. This also precludes Holly Gallion from attempting to collect any portion of the past payments from Pacific Life directly.[13] However, because the same equitable concerns do not apply to the suspended and future annuity payments, to the extent that Ford seeks summary judgment in her favor regarding the remaining annuity payments, that request will be denied.

### B. Suspended and Future Payments

Holly Gallion has moved for summary judgment against Pacific Life regarding the remaining periodic payments, asserting that she is entitled to fifty percent of the $205,000.00 in future payments from the annuity.[14] [Record No. 42-1, p. 9, Record No. 42-2, p. 15 ¶15] As Pacific Life points out, "where the stakeholder bears no blame for the existence of the ownership controversy and the counterclaims are directly related to the stakeholder's failure

---

13 Although Pacific Life makes a number of claims regarding why it is entitled to summary judgment, including asserting a statute of limitations defense and a defense of estoppel and laches, such considerations are not necessary for the reasons stated above.

14 Pacific Life suspended payment on June 1, 2012, and the remainder of the periodic payments are scheduled until April 1, 2019. [Record No. 42-1, p. 9]

to resolve the underlying dispute in favor of one of the claimants," the stakeholder is shielded from further liability on the funds. *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 259 (3d Cir. 2009). Therefore, the Court will grant summary judgment in favor of Pacific Life on Holly Gallion's counterclaim. *See Branch Banking & Trust Co. v. Bartley*, No. 2004-CA-002663, 2006 Ky. App. Unpub. LEXIS 593, at *9 (Ky. Ct. App. Apr. 28, 2006). However, the Court must still discuss the relief requested by Holly Gallion against Pacific Life; that is, whether Holly Gallion is entitled to assert a fifty percent interest in the remaining periodic payments.

The divorce decree and separation agreement plainly state that all annuities were to be divided equally between William and Holly Gallion, and this order should be given full effect to the extent possible. *See Well's Adm'x v. Heil*, 243 Ky. 282, 284 (Ky. Ct. App. 1932) ("[T]he judgment of the court of general jurisdiction is presumed regular and valid, unless the record affirmatively shows the contrary and it cannot be attacked collaterally unless it is void."). None of the parties assert that the order dividing the annuity equally between William and Holly Gallion is void or invalid. Thus, it is undisputed that Holly Gallion had a fifty percent stake in the Pacific Life annuity.

Although Holly Gallion is estopped from asserting that interest with respect to payments already made as a result of the equally-valid garnishment order, those same concerns do not apply to the suspended and future payments because all parties are now on notice of the competing claims, and none have asserted that they have acted in reliance on an action or inaction of Holly Gallion to their detriment. *See Howard*, 955 S.W.2d 525 at

527. As a result, Pacific Life will be directed to issue the remaining payments associated with the annuity, totaling $205,000, which will be divided equally between Holly Gallion and Ford, on behalf of PF Judgment Funds Escrow Account.

In short, Pacific Life will be relieved of further liability regarding the annuity, except as set forth above. *See Gen. Elec. Capital Assurance v. Van Norman*, 209 F. Supp. 2d 668 (D.C. Tex. 2002) (Stakeholder entitled to a discharge from any liability where defendants did not oppose the motion and there was no longer any material controversy involving the stakeholder). Although she is estopped from collecting the funds already distributed to Angela Ford on behalf of the escrow account, Holly Gallion is entitled to assert her one-half interest in the remaining annuity payments (that is, one-half of the $205,000.00 that remains in the annuity).

## V.

In granting interpleader relief, the Court relieves Pacific Life of liability in this action, except that it will be directed to pay the suspended and future periodic payments, from July 1, 2012, through April 1, 2019. For the reasons stated above, it is hereby

**ORDERED** as follows:

1. Plaintiffs Confederation Life Insurance & Annuity Company and Pacific Life Insurance Company's motion for summary judgment [Record No. 42] is **GRANTED**. The plaintiffs are discharged from liability and from further participation in this action, except for their obligation to make the remaining payments as directed by this and any subsequent Orders.

2. Defendant Holly Gallion's motion for summary judgment [Record No. 40] is **GRANTED** to the extent that it requests that one-half of the remaining periodic payments be issued to her, but **DENIED** in all other respects, including her claim to one-half of the $135,000.00 that the plaintiffs validly issued to Defendant Angela Ford as a result of the garnishment order.

3. The relief requested by Defendant Angela Ford in her motion for summary judgment [Record No. 52] is **GRANTED**, insofar as she requests relief from Holly Gallion's claim to the past periodic payments of $135,000.00 issued to PF Judgment Escrow Account, but **DENIED** in all other respects.

4. Within five (5) days from the entry of this Order, the parties are **DIRECTED** to confer and file with the Court proposals for the distribution of the suspended and future periodic payments, consistent with the Court's Memorandum Opinion and Order.

This 18th day of November, 2013.

Signed By:
*Danny C. Reeves* DCR
United States District Judge